It is first insisted by the defendant in error Wade Enloe that the plaintiff in error F. E. Watkins was not such a party to the proceedings had in the county court as would entitle him to an appeal from the order of confirmation, directing the issuance of a deed to the said Wade Enloe. Our statutes (Comp. Laws 1909, secs. 5451, 5452) authorized an appeal to the district court from any judgment, decree, or order of the county court against or in *Page 562 
favor of directing the partition, sale, or conveyance of real property to any party aggrieved, save where the decree or order complained of was rendered or made upon his default. If, as contended for, the plaintiff in error was the highest bidder at the hearing had on the return of the sale, obviously he was aggrieved by the order of the court confirming the sale to a lower bidder, for by the decree of confirmation his right to acquire title at said sale was adversely determined. It was unnecessary under section 5452, supra, that the party aggrieved be interested in the estate or funds affected by the decree or order, as an heir, legatee, devisee, creditor, or one having a similar interest. In legal acceptation a party is aggrieved by a judgment or decree when it operates on his rights of property, or bears directly upon his interest. Adams v. Woods,8 Cal. 306; Lamar v. Lamar, 118 Ga. 684; McFarland et al v.Pierce et al., 151 Ind. 546, 45 N.E. 706, 47 N.E. 1;Tillinghast v. Brown University, 24 R.I. 179, 52 A. 891.
Sections 5451 and 5452, as concerns the exact question here presented, are very similar to sections 938 and 963 of the Code of Civil Procedure of California. Construing these sections in connection with section 1553 of the California Statute, which is the same as section 5324, Comp. Laws 1909, it was said by the Supreme Court in Re Pearson's Estate, 98 Cal. 603, 33 P. 451:
"The order confirming the sale and directing a conveyance to be made is appealable. Section 963 (3), Code Civil Proc., authorizes an appeal to be taken from the superior court to the Supreme Court 'from a judgment or order * * * against or in favor of directing the partition, sale, or conveyance of real property.' There is no limitation upon the character of the proceeding in which the order directing the conveyance is made, and we are not authorized to limit the right of appeal more than it has been limited by the Legislature. The provisions of section 1553, Id., are not a limitation of the right of filing objections to the confirmation of the sale, but an extension of such right to those who are 'interested' in the estate. The right of the purchaser to be heard at the hearing upon the return is implied in the provision of the previous section, *Page 563 
which requires public notice of the day fixed for the hearing to be given, and his right to be heard carries with it the right to make objection to the confirmation, and section 938, Id., gives the right of appeal to any party 'aggrieved' by the action of the court, whether he be 'interested' in the estate or not."
See, also, Estate of Corwin, 61 Cal. 160; In re Reed'sEstate, 3 Cal.App. 142, 85 P. 155; Hammond v. Cailleaud,111 Cal. 206, 43 P. 607, 52 Am. St. Rep. 167; In re Jack'sEstate, 115 Cal. 203, 46 P. 1057; In re Griffiths' Estate,127 Cal. 543, 59 P. 988; In re Robinson's Estate, 142 Cal. 152,75 P. 777; In re Leonis' Estate, 138 Cal. 194,71 P. 171; In re Auerbach's Estate, 23 Utah, 529, 65 P. 488.In Re Guardianship of Billy et al., 34 Okla. 120, 124 P. 608, this court held that under the fifth subdivision of section 5451, supra, an appeal could be prosecuted to the district court by a purchaser at a guardian's sale from an order refusing to confirm the sale. The statute is one that should be liberally construed. In the administration of justice, full opportunity for the review and correction of errors should be afforded, not only to the minor, but to the highest bidder as well. The statute giving the right of appeal to an aggrieved party is sufficiently comprehensive to accord to plaintiff in error an opportunity to have reviewed the decree complained of.
The remaining question for consideration is: Was there an abuse of discretion on the part of the county court in accepting the bid of defendant in error for $5,100, and declining to receive or consider the bid of plaintiff in error for $5,500? Section 5323, Comp. Laws 1909, provides that, upon the hearing of the return of sale, it becomes the duty of the court to examine said return and witnesses in relation thereto, and if the proceedings had were unfair, or the sum bid disproportionate to the value, and if it appears that a sum exceeding the return bid at least ten per cent. exclusive of the expenses of a new sale, may be obtained, the court may vacate the sale and direct a new one to be had, of which notice must be given, and the sale in all respects conducted as if no previous sale had taken *Page 564 
place. But, if an offer of ten per cent. more than the amount named in the return be made to the court in writing by a responsible person, it then rests in the discretion of the court to either accept such offer and confirm the sale to such person or to order a new sale. The guardian in the present case made his return in writing, reporting a sale to the defendant in error of the lands of his ward for $4,100. The return coming on to be heard on July 26, 1910, the plaintiff in error submitted in writing a bid of $4,525. Thereupon the defendant orally offered to bid $4,600, and the court directed that additional bids must be in writing, and requested the parties to so submit their highest and best bids. Whereupon the defendant in error submitted a new bid of $5,100; the plaintiff in error, a new bid of $5,000. The court then stated that the said defendant in error was the highest bidder, and accepted the bid, and ordered the confirmation of the sale to the said defendant in error Enloe. Immediately thereupon plaintiff in error, acting through his attorney, objected to the confirmation of the sale of said lands to said defendant in error, and filed in said court on behalf of the plaintiff in error a raised bid in the sum of $5,500. This written bid, though filed in court at the time, the court refused to receive or consider, and proceeded to confirm the sale to the said Wade Enloe for the sum of $5,100. It was shown that Watkins was a responsible person, and that his attorney offered to and did make a deposit in a local bank of ten per cent. of the amount of the bid. The statute authorizing competitive bidding at the hearing to be had on the return of public sales conducted by guardians contains little in the way of procedure. But there is sufficient to indicate the legislative intent, that the primary duty of the court in such cases should be, and is, to fully protect the interests of the minor. Proper regard, however, should at all times be had for the rights of the prospective purchaser, who is the highest and best bidder at the sale, for he has rights, both legal and moral, which should receive due consideration in determining whether or not a confirmation of the sale will be ordered. *Page 565 
The case is presented to us without substantial conflict in the testimony. The county judge, who was a witness in the district court, testified concerning the sale:
"If there was any further bidding to be done that I would not cry it off at public sale, it was not my policy, didn't think it was the law."
It is not in the discretion of the county court to receive increased bids; that duty is mandatory. The statute, however, provides no procedure for receiving competitive bids, other than the original raised bid or bids. While it is not made the duty of the county court to cry off such sales, it is his right to receive all bids submitted on the hearing, and to afford a sufficient opportunity to all bidders, or those present desirous of bidding, to submit one or more bids. The object of the statute in allowing increased bids to be filed is that the court may secure as high a price for the land as possible; and if this can be accomplished without the necessity of ordering a new sale, thereby subjecting the estate to additional expense and delay, it is his duty to do so. Immediately upon opening the two bids, that of Enloe for $5,100 and of Watkins for $5,000, the representative of the latter objected to the lands being knocked off to the former, and promptly submitted in writing a further increased bid in the sum of $5,500. This bid the court refused to receive or consider, though it was permitted to be filed. At the time no entry of the order of confirmation to the defendant in error had been made. The whole proceedings occupied the short space of from fifteen to thirty minutes time. We are not disposed to consider technicalities in the manner of closing bids, particularly where no procedure is fixed by statute, or formal rule of court. Great liberality should be indulged in the manner of receiving bids, to the end that the best price possible may be obtained. The original increased bid of plaintiff in error caused defendant in error to increase his own bid $1,000, and we think the court should either have accepted the latter bid of the plaintiff in error of $5,500, or in the exercise of a sound judicial discretion ordered a new sale. Clearly *Page 566 
it was error, unless upon the technicality that the bidding had closed, to order confirmation of the sale to the second highest bidder at a difference of $400 in the purchase price. Our views of the procedure that should obtain in such cases find support in Re Griffith's Estate, 127 Cal. 543, 59 P. 988, where it is said:
"The provisions in section 1552, giving the court a discretion to accept the offer of an advanced bid, or to order a new sale, does not limit its exercise of that discretion to the alternative of accepting the first offer that may be made or ordering a new sale, but it is authorized to receive as many bids as may be made, and, upon a consideration of all the bids, may then determine whether to accept the highest, or to order a new sale. The object of the provision in the above section is that the court may secure as high a price for the property as possible, and, if it can accomplish this result without subjecting the estate to the expense and delay attendant upon a new sale, it would seem to be in the exercise of a wise discretion to permit a competitive bidding for the property at the hearing upon the return."
See, also, Griffin, Ex'r, v. Warner et al., 48 Cal. 383;Estate of Durham, 49 Cal. 490; Perkins v. Gridley, 50 Cal. 97;In re Jack's Estate, 115 Cal. 203, 46 P. 1057; In re Leonis'Estate, 138 Cal. 194, 71 P. 171; In re Robinson's Estate,142 Cal. 152, 75 P. 777; In re Reed's Estate, 3 Cal.App. 142,85 P. 155.
Since the submission of this case it has been brought to our attention that Luther Bohanan, the ward, died in Le Flore county, July 25, 1911, and that on the 27th day of December, 1911, one J. W. Bryan was by the county court of Le Flore county appointed administrator of his estate. Application was filed in this court by said administrator on April 24th last to revive the cross-appeal prosecuted by W. A. Welch, Jr., guardian of the said Luther Bohanan, in the name of J. W. Bryan, administrator of the estate of Luther Bohanan, deceased, or that the name of said J. W. Bryan, administrator as aforesaid, be substituted in lieu of the name of said W. A. Welch, Jr., guardian of said Luther Bohanan, a minor, and thereupon the said administrator be permitted to prosecute the cross-appeal. *Page 567 
Notice to revive or substitute as might by the court be deemed proper has been duly served upon all parties to the proceedings in this court, and the written consent to the making of the administrator a party and reviving the cross-appeal in his name has been filed by plaintiff in error, Watkins. The proceeding as originally instituted was an application on the part of the guardian for an order to sell real estate of his ward for the purpose of investment, and for the support, maintenance, and education of said minor. The death of the ward necessarily terminated the guardianship, except for the purpose of final settlement by the guardian. Missouri, O. G. Ry. Co. v.Gentry, 31 Okla. 579, 122 P. 537. The death of the ward likewise terminated any necessity for the sale of his estate for either of the purposes named. Being dead, no title to his lands could be acquired through the instrumentality of a guardian's sale. The consent or passiveness of the parties to the appeal cannot convert the present action into an administration proceeding. A case similar in some of its aspects was before the Supreme Court of California in ReLivermore's Estate, 132 Cal. 99, 64 P. 113, 84 Am. St. Rep. 37. The application for the sale was made after the death of the ward, who before her death attained her majority. The order of sale was made by the superior court, and in reversing the case it was said by the court on appeal:
"The foregoing proceeding is unique in this state, and the order made by the trial court cannot find support in the law. The title furnished to a purchaser at the sale by the deed of the guardian would not be worth a dollar. The proceedings here taken for the sale were had under the Code provisions pertaining to guardianship matters, and as to a sale of real estate those proceedings only contemplate a ease where there is a living ward, a living ward not only when the proceedings are inaugurated, but up to and including the moment the deed is made. When the guardian executes the deed, he executes it for and in the place and stead of his ward, and the moment that ward is dead his power to execute the deed is gone. He has no more power to execute a deed under these circumstances than would an attorney in fact after the death of his principal. It is unnecessary *Page 568 
to consider here what a court of equity might do under the circumstances presented by the facts of this case, in aid of the probate jurisdiction of the superior court, for here the statutory procedure laid down in the Code in guardianship proceedings alone has been followed, and the sale is asked under that procedure. The guardian, as such, is attempting to make the sale, and the court is well assured it cannot be done. In Alford v. Halbert, 74 Tex. 354, 12 S.W. 76, a case similar in principle to the one at bar, the court said, in speaking of the efforts of a guardian to recover from the ward's estate the amount found due him by the probate court: 'We think the only course left her was to administer in the proper court upon the estate of the deceased ward.' "
The decree of the county court having been stayed, no deed was made in pursuance thereof. None can now be executed on account of the death of the ward, and the cause should be reversed, with instructions to dismiss the petition.
By the Court: It is so ordered.