## APPLE et al. v. GIVEN.

No. 15473—Opinion Filed Sept. 22, 1925.

Rehearing Denied March 23, 1926.

1. **Guardian and Ward—Sale of Ward's Interest in Oil and Gas Royalty—Validity.**

S. purchased an undivided one-half interest of the royalty, reserved to a minor, in an oil and gas lease. After making the purchase and the confirmation of the sale by the county court S. agreed to convey the interest so purchased to H., and pursuant to said agreement, the guardian executed a deed conveying said interest to S. and at the same time S. executed a quitclaim deed conveying said interest to H. H. paid the guardian the purchase price. In the absence of any evidence of fraud, collusion, or injury to the ward, said conveyances are valid.

2. **Same — Immaterial Irregularities of Guardian in Closing Sale and Collection.**

When the interest of a ward is regularly sold at guardian's sale, and all of the doings of the guardian and county court are regular up to the confirmation of such sale, no irregularity on the part of the guardian in collecting the sum bid and closing the sale is material, unless the ward is in some way injured thereby.

(Syllabus by Dickson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by Geneva May Given against S. A. Apple and Jake L. Hamon, as administrators of the estate of Jake L. Hamon, deceased. Judgment for plaintiff, and de-

fendants appeal. Reversed and remanded.

Wilson, Tomerlin & Threlkeld, and Fred R. Ellis, for plaintiffs in error.

Young, Haste & Powell, for defendant in error.

Opinion by DICKSON, C. On the 10th day of February, 1922, the defendant in error, an Indian minor, by her next friend, commenced this suit in the district court of Carter county against Frank L. Ketch, as administrator of the estate of Jake L. Hamon, deceased, to set aside an order of confirmation made by the county court of said county on the 6th day of April, 1920, the guardian's deed made pursuant to said confirmation, and the quitclaim deed executed by the purchaser at said guardian's sale to Jake L. Hamon. During the progress of the litigation, the plaintiff below attained her majority and was substituted as plaintiff, and the defendant, Frank L. Ketch, resigned as administrator of said estate, and the defendants in error were appointed as administrators thereof, and were substituted as defendants below.

Hereafter the parties will be designated as plaintiff and defendants as in the trial court.

The facts necessary to an understanding of the questions presented here are: That the plaintiff, an Indian minor, was allotted a 100-acre tract of land in Carter county. On the 23rd day of January, 1917, one Morris Sass, then being guardian of said plaintiff, executed and delivered to B. A. Simpson and his associates, a valid oil and gas lease covering the lands embraced in said allotment, which lease reserved to said minor a one-eighth interest in all of the oil and gas produced and saved from said premises.

On the 8th day of March, 1920, the guardian of the plaintiff filed a petition in the county court of Carter county praying for an order authorizing him to sell an undivided one-half interest in said royalty. After proper notice, an order of sale was made as prayed in said petition, and the guardian sold the one-half interest in said royalty to said B. A. Simpson for $72,000. This sale was confirmed by said county court on the 6th day of April, 1920, and on the next day the guardian tendered the deed to the purchaser and demanded the purchase price. The purchaser declined to pay the purchase price at the time, declaring that he had discovered some defect in the title.

It is conceded that all of the proceedings of the county court and all of the doings of the guardian, leading up to the sale and confirmation and the execution of the guardian's deed, were in all respects regular.

A few days later, Jake L. Hamon offered to purchase the interest so sold to B. A. Simpson and pay the amount of Simpson's bid, provided Simpson would accept the guardian's deed and convey the property so purchased to him. This arrangement was agreed to, and on the 27th day of April, 1920, the said Jake L. Hamon delivered to said guardian his individual check for $72,000, and the said guardian delivered his guardian's deed to said B. A. Simpson, and Simpson executed and delivered a quitclaim deed conveying said interest to Jake L. Hamon.

It is conceded that the $72,000 check was good and would have been cashed if presented. At the same time Jake L. Hamon applied to said guardian and the county court to borrow $60,000 from the ward's estate, and with the approval of the county court, the guardian loaned the said Jake L. Hamon $60,000, due and payable in one year, and accepted Hamon's promissory note for said amount, said note being endorsed by Frank L. Ketch, and secured by a mortgage upon the interest conveyed by said guardian's deed. Upon the delivery of the note for $60,000 to the guardian, the guardian returned to Hamon his $72,000 check and received $12,000, which with the note made up the amount of the purchase price. It is conceded that the $60,000 note, endorsed by Frank L. Ketch, was perfectly good without the mortgage security. And afterwards and before the filing of this suit, the said Jake L. Hamon or his administrator caused a part of said note to be paid, and had the note extended as to the balance at a higher rate of interest, and the entire note and interest was paid to the guardian of the ward before the trial in the court below. The plaintiff tendered this amount in court and prayed for the cancellation of the order confirming the sale, the guardian's deed to Simpson, and the quitclaim deed from Simpson to Hamon; and oil having been discovered upon said lands after said sale, the plaintiff prays for an accounting. The court rendered a judgment and decree for the plaintiff substantially as prayed in her petition, and the defendants have appealed, and for a reversal here assign that the judgment and decree is contrary to the evidence and the law.

There is no contention that there was any fraud in the transactions leading up to the guardian's sale. It is undisputed that the minor's interest was sold for all it was worth at the time. In fact, the plaintiff's evi-

dence is to the effect that had the sale been set aside and the interest re-advertised and sold, it would not have brought the amount of Simpson's bid. The contention of the plaintiff, which appears to have been adopted by the trial court, was that the entire transaction was void for the reason that Simpson was not in fact the purchaser of said interest, that it was known to the guardian at the time the deed was delivered to Simpson, that Simpson was a mere trustee with no beneficial interest whatever, and that, in fact, the purchase price was not paid by Simpson, but by Hamon. This being a judicial sale (In re Standwaitie's Estate, 73 Okla. 255, 175 Pac. 542), the guardian was not interested in who ultimately obtained title to the interest sold. Simpson might have bid the interest off for the use of Hamon in the first instance, and after his bid was accepted he could have assigned the bid to Hamon, and the county court would have directed the deed to have been made to Hamon. 35 C. J. 51, sec. 72. The guardian might have brought a suit against him for the specific performance of his contract of purchase (Ennis v. Cator [Tex.] 174 S. W. 947), or the guardian might have reported the purchaser's refusal to pay the purchase price to the court, and have caused the order of confirmation to have been vacated, and then re-advertised the interest, and in the event the price brought at the second sale was less than the bid of Simpson, have recovered the difference. Section 1284, C. O. S. 1921. The order of confirmation was never set aside, and we are of the opinion that the fact that the purchase price was paid by Hamon instead of Simpson is entirely immaterial. The guardian and the ward were interested in closing the sale and collecting the purchase price, and when the purchase price was received by the guardian, it was his duty to deliver his deed and close the transaction.

It is further contended that the entire transaction amounted to a sale of the ward's interest at private sale to Hamon. We do not think the record bears out this contention. It is true that the guardian knew that at the time he delivered the deed to Simpson, Hamon was to receive the interest sold, but this is not important. The guardian conveyed the interest to the purchaser at the sale, pursuant to the order of confirmation, and it was immaterial to him what the purchaser did with such interest thereafter. The fact that the guardian made a loan to Hamon does not alter the situation. It appears that this loan was made after the $72,000 check had been delivered to the guardian, and upon the approval of the

county court. No collusion or fraud appears in the entire transaction, and the ward received every dollar of the purchase money and interest.

As said In Re Bohanan v. Watkins, 37 Okla. 560, 133 Pac. 44:

"We are not disposed to consider technicalities in the manner of closing bids, particularly where no procedure is fixed by statute or formal order of court. Great liberality should be indulged in the manner of receiving bids to the end that the best price possibly may be obtained."

We are of the opinion that there is no theory upon which the decree appealed from can be upheld, and, therefore, recommend that the judgment and decree appealed from be reversed, with directions to the trial court to vacate the same and dismiss the plaintiff's case.

By the Court: It is so ordered.

Note.—See under (1) 28 C. J. p. 1194 § 340 (Anno); 35 C. J. pp. 52, §72, 62, § 91. (2) 28 C. J. p. 1197, § 343 (Anno).