### David W. SAWYER

### v.

### Elizabeth P. FIRESTONE.

### No. 85–310–Appeal.

Supreme Court of Rhode Island.

Aug. 1, 1986.

---

Jeremiah C. Lynch, Jr., Moore Virgadamo & Lynch, Ltd., Newport, for plaintiff.

Kathlan Managhan, William W. Corcoran, Corcoran Peckham & Hayes, Newport, for defendant.

## OPINION

KELLEHER, Justice.

This civil action involves a right of first refusal to purchase ocean-front property in Newport, Rhode Island.

The plaintiff, David W. Sawyer (Sawyer), entered into a purchase-and-sale agreement on June 1, 1982, with the defendant, Elizabeth P. Firestone (Firestone). The agreement provided, among other things, that Sawyer would purchase from Firestone all the improved real estate known as "The Orchards" located on Narragansett Avenue in Newport, together with the adjacent parcels bounding on Annadale Road, designat-

ed as lots Nos. 47, 46, and 172 of the Newport Tax Assessor's Plat No. 34. The provision in the agreement now in dispute stated that

> "the seller shall grant to the Purchaser a right of first refusal for her other real estate located to the east and designated as Lot No. 48 on said Plat No. 34 in the event she desires to sell the same."

Sawyer paid a "nonrefundable deposit" in the amount of $25,000 pursuant to the agreement and upon its execution.

By letter dated September 8, 1982, Firestone through her new counsel informed Sawyer that she did not understand that such a right of first refusal was contained in the agreement and asked if Sawyer would "agree to have the right of first refusal provision deleted from the Agreement and omitted from the conveyance." In response to the letter, Sawyer wrote Firestone that he would "not agree to a deletion of the right of first refusal concerning Lot No. 48 from the agreement or omit it from the conveyance."[1] On October 29, 1982, Sawyer's attorney reminded Firestone's counsel that Sawyer was "particularly interested in the description to be contained in the deed and the language concerning Sawyer's right of first refusal on Firestone's abutting lot No. 48." A draft deed was prepared by Firestone's counsel on November 4, 1982, which altered the language concerning the right of first refusal:

> "As further consideration for this conveyance the Grantor [Firestone] for herself and her heirs and devisees, covenants and agrees that in the event she or they decide at any time to sell and convey premises of this Grantor, presently designated as Lot 48 on said Newport Tax Assessor's Plat 34 *as a separate parcel* at private sale, that she or they shall give to the Grantee the first opportunity to purchase the same at the price for which the Grantor, her heirs or devi-

---

1. The plaintiff also exercised his option in this letter to extend the closing to December 31, 1982, by tendering an additional check for $25,000 to Firestone.

sees are willing to sell the same * * *." (Emphasis added.)

The same language, modifying the right of first refusal, was included in the revised deed sent to Sawyer with a letter dated December 23, 1982.[2] The controversy concerning the right of refusal was never resolved.

On December 31, 1982, Sawyer sent a letter to Firestone informing her that he was terminating negotiations to resolve their differences and that the agreement had been rescinded on the ground of "an apparent mutual mistake" of the parties and requested the return of the $50,000 deposit. Firestone refused to return the deposit, and this action ensued.[3]

Testimony was presented in this jury-waived trial for two days, and the trial justice found that the agreement gave plaintiff an unconditional right of first refusal, dismissing Firestone's contention that she did not comprehend the right granted. He determined that Sawyer specifically rejected Firestone's request to agree to the deletion of the right and that Firestone "well knew, as a result of that letter of September 29, 1982, that plaintiff would stand on his rights." The trial justice stated that both the proposed deeds restricted the right of first refusal granted in the agreement and "[t]he facts as found establish [Firestone] breached the contract. She was unwilling to give that which she was bound to give—unconditional right of refusal on lot 48, which fronts on the Atlantic Ocean. The importance of that right to [Sawyer] can be seen by examination of [the maps depicting the area]." The trial justice concluded that Firestone's breach was material and supported Sawyer's right to rescind, which he exercised by letter dated December 31, 1982. He found that the right to rescind was grounded on alternate theories—either "abandon-

ment," citing *Jakober v. E.M. Loew's Capitol Theatre*, 107 R.I. 104, 112, 265 A.2d 429, 434 (1970) (language from *Graves v. White*), or "repudiation" by Firestone under *Maytag Co. v. Alward*, 253 Iowa 455, 112 N.W.2d 654 (1962). Thus, judgment was entered for Sawyer on February 14, 1985, and Firestone was ordered to return the $50,000 with interest thereon from December 31, 1982.

Firestone's appeal is based on her contention that the addition of the words in the proposed deeds limiting the right of first refusal to a sale of lot No. 48 "as a separate parcel" did not alter the legal effect of the right of first refusal granted in the original agreement. She asserts that pursuant to the purchase-and-sale agreement, as well as to the language contained in the proposed deeds, she had an unrestricted legal right to include lot No. 48 in a larger tract of land and sell it to a third party. Thus, it is her position that she did not breach the purchase-and-sale agreement by adding the words "as a separate parcel" in the deeds she tendered to Sawyer. Sawyer maintains that the words "as a separate parcel" contained in the proposed deeds unduly restricted his right granted in the purchase-and-sale agreement.

Recently, we distinguished a right of first refusal from an option contract. *See Hood v. Hawkins*, 478 A.2d 181, 185 (R.I. 1984). A right of first refusal is "not an offer and creates no power of acceptance. It is a transaction by which one party acquires what can be variously described as the 'Right of First Refusal,' the 'First Right to Buy,' or the 'Right of Preemption.' 1A *Corbin on Contracts* § 261 at 468 (1963). A right of first refusal 'does not give the

[possessor of it] the power to compel an unwilling owner to sell; it merely re-

---

2. Sawyer subsequently requested a three-month extension from December 31, 1982. Firestone offered a two-month extension upon payment of an additional $15,000 deposit. No agreement was reached involving the extension from December 31, 1982.

3. Counts 2 and 3 of the complaint and Firestone's counterclaim were denied and dismissed. The only issue before us involves Count 1, the right of first refusal.

quires the owner, when and if he decides to sell, to offer the property first to the person entitled to the [right of first refusal] at the stipulated price.' *Mercer v. Lemmens*, 230 Cal.App.2d 167, 170, 40 Cal.Rptr. 803, 805 (1964). This court has described a right of first refusal in a similar fashion. '[A] first refusal to purchase * * * does not become effective unless the respondents are willing to sell. If they are willing to sell they may not sell to anyone other than the complainants until an opportunity is afforded complainants to purchase at the price offered.' *Butler v. Richardson*, 74 R.I. at 349, 60 A.2d at 721."

The only issue meriting our attention is whether an unrestricted right of first refusal is rendered legally ineffective where the vendor includes the property subject to the right of first refusal in the sale of a larger tract of land.

Both parties rely on *Straley v. Osborne*, 262 Md. 514, 278 A.2d 64 (1971), to support their conflicting positions. In *Straley* the Maryland Appellate Court addressed the issue of what rights or interests the lessee possessed by virtue of his "right of first refusal." The court found that the lessee could have brought suit to enjoin the proposed sale of a tract of land that included the property covered by the right of first refusal and stated that

"it is generally held that, when a lessor receives an offer for purchase of a larger tract which includes the leased parcel, the lessee holding the first option to purchase cannot require the lessor, by means of specific performance, to convey to him the leased portion alone. The reasoning of such cases is that the contemplation (or even the acceptance) by the lessor of an offer for the larger tract is no manifestation of an intention on his part to sell the smaller (leased) portion separately. *Aden v. Estate of Hathaway*, [162 Colo. 311,] 427 P.2d 333, 334 (1967); *Guaclides v. Kruse*, [67 N.J.Super. 348,] 170 A.2d 488, 493 (1961); *New Atlantic Garden v. Atlantic Garden Re-*

*alty Corp.*, [201 App.Div. 404,] 194 N.Y.S. 34, 40 (1922), *affd.* [237 N.Y. 540,] 143 N.E. 734 (1923). *Cf. Anderson v. Armour and Co.*, [205 Kan. 801,] 473 P.2d 84, 89 (1970).

"On the other hand, the lessor cannot act in derogation of the lessee's 'first option' rights in the leased premises, and accordingly it has been held that the lessee may prevent a sale of the leased premises without regard to his rights by means of injunction. *Guaclides v. Kruse, supra*, [170 A.2d] at 494–495. If a sale is made in violation of the lessee's rights, a subsequent purchaser with actual or constructive notice of these rights takes subject to them. *Guaclides v. Kruse, supra*, at 496, *Atlantic Refining Co. v. Wyoming Natl. Bank, supra*, footnote 8, on 724. And this is as it should be, for to rule otherwise would be to allow a lessor to render the lessee's bargained for 'first option' a nullity by merely including it in a larger tract being offered for sale." *Straley*, 262 Md. at 523–24, 278 A.2d at 69–70.

Even when the holder of the right of first refusal is not a lessee, s/he has a right to bring suit to enjoin the proposed sale and restrain the owner from vitiating his/her right of first refusal by including property in excess of the land subject to the right in the prospective conveyance. "To allow the owner of the whole to bypass the [right of first refusal] merely by attaching additional land to the part under option [of first refusal] would render nugatory a substantial right which [was] bargained for and obtained." *Guaclides v. Kruse*, 67 N.J.Super. 348, 359, 170 A.2d 488, 495 (1961). The majority of jurisdictions have agreed with the holdings in *Straley* and *Guaclides* and held that a landowner may be enjoined from conveying a tract of land that includes a parcel subject to a right of first refusal. *Gyurkey v. Babler*, 103 Idaho 663, 667, 651 P.2d 928, 932 (1982) (and the cases cited therein); *see also* Annot., 34 A.L.R.4th 1217, 1232–37 (1984).

We agree with the majority view that a seller may not defeat a right of first refusal by selling the property subject to the right as part of a larger tract. Thus, while the holder of such a right may not force a separate sale of the land, s/he may enjoin the proposed sale of a larger tract of land that includes the parcel subject to the right of first refusal.

Therefore, the unconditional right of first refusal granted to Sawyer in the purchase-and-sale agreement gave him a right to prevent the sale of lot No. 48 with Firestone's other contiguous land to a third party. By adding the clause "as a separate parcel" in the proposed deeds, Firestone restricted Sawyer's right. This clause defeats Sawyer's right to enjoin a proposed sale of land that includes lot No. 48. Under the purchase-and-sale agreement Firestone was obligated to convey a deed to Sawyer giving him an absolute right of first refusal of lot No. 48. Firestone refused to convey such a right. Thus, we agree with the trial justice's determination that Firestone breached their agreement as she was "unwilling to give that which she was bound to give" by the purchase-and-sale agreement—an "unconditional right of first refusal on lot 48."

Consequently, Sawyer was entitled to rescind the purchase-and-sale agreement. "Such a 'rescission' is merely an assertion by the injured party that the other has committed a vital breach, that [the injured party] has been discharged from the duty of further performance, and that he [or she] asks for a restitutionary remedy."[4] 5 *Corbin on Contracts* § 1104 at 558 (1964). Because Firestone refused to perform in accordance with her obligations under the purchase-and-sale agreement, Sawyer is entitled to the return of his deposit. *See DiBiasio v. DiFazio*, 103 R.I. 565, 571, 239 A.2d 719, 722 (1968). *See also* 5 *Corbin on Contracts* § 1108.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

BEVILACQUA, C.J., participated in the oral argument and in the decision of the court but retired prior to the publication of this opinion.

---

**4.** Firestone has not questioned the trial justice's finding that the breach was material.